# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MABLE S. JONES,** *Plaintiff,* | : : : | **CIVIL ACTION** |
| v. | : : | No. 19-1277 |
| **SCHINDLER ELEVATOR CO.,** *et al.,* *Defendants.* | : : : | |

## MEMORANDUM

### I. Introduction & Background

Plaintiff alleges that "[o]n the morning of January 12, 2017, at Bloomingdales Willow Grove location, [she] suffered serious and permanent injuries as the result of the malfunction of the 'up' escalator between the second and third floors of the store." Compl. ¶ 3. More specifically, Plaintiff testified that while riding on the escalator with her granddaughter, who was in a stroller straddled across multiple escalator steps, when she was "somewhere between half way and two-thirds up," the hem of her left "pant leg became caught between the steps and that should not have happened." Mable Dep. Tr. 56:3-9, 56:14-16, 56:17-21,106:7-11, 111:13-18. As a result, Plaintiff testified that the tugging on her pants hem caused her to fall. *Id.* at 61:21–62:10. Plaintiff did not recall looking down to see where the hem of her pants was caught. *Id.* at 62:16-19. After Plaintiff fell, she was helped by a Bloomingdales employee, continued to shop for approximately twenty minutes using the elevator to travel to the third

1

floor and then back down again, and then left the store. *Id.* at 119:3–120:2.
Plaintiff claims that consequently, she suffered a concussion, which is "supported by her medical record and her treating physician." ECF No. 58 at ¶ 14. However, Plaintiff does not cite to any document of record to support the occurrence of this injury or the diagnosis thereof.

Plaintiff testified that while riding the escalator, she did not observe anything out of the ordinary about the movement of the escalator. *Id.* at 73:9-15. Indeed, it was not operating at an excessive speed, it was not jerking or shaking, it was not lurching, and it was not stopping or starting suddenly. *Id.* at 73:16-24. In fact, the escalator was operating the same way it had operated on all of Plaintiff's previous occasions riding that escalator. *Id.* at 74:1-5. Those observations by Plaintiff herself are supported by the routine daily escalator inspection log completed by Bloomingdales employees for the escalator in question. ECF No. 47-1 at p. 62.

Despite Plaintiff having reported the day after the accident that it was her sneaker[1] that caught in the escalator step that caused her to fall, Plaintiff testified that it was in fact her pant hem that caught on the escalator that caused her to fall.

---

[1] Defendants requested the production of the sneakers Plaintiff was wearing the day of the accident, but Plaintiff testified that she could not produce them because they were "thrown away. They are gone." Mable Dep. Tr. 60:2-5. Plaintiff testified however that she did not look at the sneakers at any point after the accident to see if there was any damage to the "soles, the uppers, [or] anything about the shoe." *Id.* at 85:1-6.

2

*Id.* at 82:8-10, 83:24–84:2. Plaintiff testified that her pants hem did not extend below the sole of her shoes, but that they did not end above her ankle either. *Id.* at 57:14–58:19. In her words, "[t]hey did not drag on the floor, and they were not high waters." *Id.* at 58:8-9.

Plaintiff testified that she was unaware of which part of her hem caught on the escalator. *Id.* at 56:17-21. (A: "My hem. The hem. I can't speculate whether it was the front or the back or the side. I don't know. It just caught."). Further, Plaintiff never observed any damage to the hem of the left leg of her pants following the accident. *Id.* at 57:10-13. Defendants requested the production of the pants Plaintiff was wearing the day of the accident, but Plaintiff testified that she "would need to look for them" in order to produce them and did not know whether even if produced, Defendants would be able to observe any damage to the pants. *Id.* at 57:6-9 ("But it's not as though I've examined them or seen them since this happened, and it's been almost two years. It's been over two years. I would need to look for them."); at 56:22–57:3.

Plaintiff also testified that sitting at her deposition she did not know whether there was anything about the operations of the escalator that was a "malfunction." *Id.* at 56:10-13. She stated that she did not recall looking down to see where on the escalator the hem of her pant was caught, only that she "felt the tug. That is what informed me that there was a pulling on my hem." *Id.* at 61:21–62:19. In essence,

3

Plaintiff could not explain in her deposition how the pant leg "became trapped between two escalator steps." *Id.* at 66:6-9. Indeed, when asked what the defective condition of the escalator was as claimed in the Complaint, Plaintiff said "[t]he condition that caused my pant leg to be caught." *Id.* at 71:4-8; at 71:9-17 ("Q: You've already told me that you don't know what that condition was because you're not sure where your pant leg was caught; is that correct? A: That is correct. However, my pant leg was caught. So it follows then that there was something abnormal about the escalator or my pant would not have been caught."); at 71:18-21; 72:1-5 ("Q: Basically what you're saying is that since your accident happened, you think there's something wrong with the escalator; is that a fair summary of your belief? . . . A: The fact that the accident happened; the fact that my pant leg was caught; then it follows that there was something wrong with the – yeah, I think that speaks for itself. I agree. That's my position, yes."); at 73:3-8 ("Q: Do you know what type of maintenance was required on that type of escalator? A: Only that it was not adequate to prevent my fall. If it had been adequate, then I would not have fallen.").

Plaintiff recognizes that she does not know anything about the design or maintenance of escalators. *Id.* at 67:8-11; at 68:20–69:3 ("Q: Do you have any knowledge of whether the space or clearance between one step and another step, and the space or clearance between the step and the side skirts of the escalator on

4

the day of you accident exceeded the clearance specified in the national elevator safety code? A: I have no such knowledge."); at 69:4-9 ("Q: Do you have any knowledge of what the clearance specified by the escalator designer for the space between one step to another and the space between step and the side skirt was at the time of installation? A: I have no such knowledge.").

Plaintiff admits that before this accident happened, she was aware that she was not supposed to take strollers on escalators, but she did not remember noticing the signage by the entrance to the escalator advising that strollers should not be taken on the escalator. *Id.* at 127:4–129:6. Indeed, she testified that before this accident happened, she did not think that she had ever taken the stroller on the escalators either at Bloomingdales or at any other location. *Id.* at 99:14-18.

Based upon those stated facts, Plaintiff filed suit in Philadelphia County Court of Common Pleas against Schindler Elevator Corporation ("Schindler"), Bloomingdales, Inc. ("Bloomingdales"),[2] and Broadspire Services, Inc. ("Broadspire") alleging claims for "strict liability – defect in design – product liability" against all Defendants claiming that they maintained, installed, and assembled the escalator, which had an unspecified defect from the date of

---

[2] Plaintiff originally named Schindler Elevator Corporation as "Schindler Elevator Company" and Bloomingdales, Inc. as "Macy's Corporation/Bloomingdales" in her Complaint. ECF No. 1 at p. 6. The case caption was amended to correctly name the parties as Schindler Elevator Corporation and Bloomingdales, Inc. ECF No. 29.

5

installation (Count I); "negligent design and/or maintenance – product liability" against all Defendants claiming that they were negligent in design, manufacture installation, and maintenance (Count II); and "strict liability – abnormally dangerous activity – products liability" against Bloomingdales and Broadspire based on those Defendants' alleged maintenance of the escalator (Count III). ECF No. 1 at p. 22.

Schindler and Bloomingdales moved to remove the case to this Court thereafter pursuant to 28 U.S.C. §§ 1332 and 1446(a). ECF No. 1 at p. 9. Broadspire consented to the removal of this action, and this Court later dismissed the claims as against Broadspire. *Id.*; ECF No. 19.

## II.  Standard of Review

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Civ. P. 56(c). As the Supreme Court has emphasized "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quotation and citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. Discussion

Bloomingdales and Schindler (collectively, "Defendants") moved for summary judgment arguing that Plaintiff has failed to present a *prima facie* case of negligence against either Defendant. ECF No. 45 at p. 7. Specifically, Defendants contend that Plaintiff has failed to identify any direct evidence that either Defendant failed to properly inspect or maintain the escalator in question or that either Defendant had actual notice, constructive notice, or knowledge of a discoverable dangerous condition or defect of the escalator. *Id.* Thus, Defendants contend that in the absence of any direct evidence against Defendants, "Plaintiff is left to resort solely on the inference of negligence under the theory of res ipsa loquitur" and that Plaintiff is "unable to sustain her burden of proving the three necessary prerequisites to the res ipsa loquitur inference of negligence." *Id.* at pp. 7-8.

Plaintiff argues that Defendants have failed to show that there is no genuine issue of material fact. ECF No. 58 at p. 2. More specifically, Plaintiff contends that the material fact at issue is "whether the escalator in question was properly maintained and free of defects at the time of the accident. The maintenance records document that there were numerous instances where the maintenance technician reported mechanical problems with the escalator in the months leading up to plaintiff's accident and the technician documented that he spoke to Bloomingdales Security about these mechanical problems." *Id.* at pp. 2-3. Specifically, Plaintiff contends that the "maintenance records for the escalator in question prove that the escalator was not properly maintained and that it was in fact defective and was the cause of Plaintiff's fall." *Id.* at ¶ 16.

Because Plaintiff is proceeding *pro se* in this matter, the Court will liberally construe her pleadings and filings, *see Etselle v. Gamble*, 429 U.S. 97, 106 (1976), and interpret her response to Defendants' motion to mean that she is proceeding on her negligence claim against Defendants on both a theory of traditional negligence based on direct evidence and in the alternative, a theory of *res ipsa loquitur*, but abandoning her strict liability claims. *See* ECF No. 58 at ¶ 7 ("Defendants' Motion for Summary Judgment refers to Plaintiff's 'Product Liability" Claim; however, Plaintiff's Complaint relies on the Principle of Res Ipsa Loquit[u]r and the Defendants' failure to provide reasonable care to an invited guest at Bloomingdales

Department Store."); at ¶ 15 ("Although Plaintiff initially relied on the evidentiary Principle Res Ipsa Loquit[u]r, actual evidence of the cause of Plaintiff's accident became apparent during Discovery in the form of Maintenance Records which were produced in the Defendants' disclosures.").

The Court finds that Plaintiff has failed to put forth a *prima facie* case based on either direct evidence or the theory of *res ipsa loquitur*.

    A.    <u>The direct evidence Plaintiff points to does not raise an issue as to any material fact.</u>

Defendants contend that Plaintiff has failed "to identify any evidence in the factual record to support a claim of negligence against either [D]efendant." ECF No. 59 at p. 5. Further, they state that the only direct evidence Plaintiff "mentions is the maintenance records, which she contends prove the escalator was not properly maintained and in defective condition." *Id.* Indeed, Plaintiff asserts in her response to Defendants' Motion for Summary Judgment that the "maintenance records for the escalator in question prove that the escalator was not properly maintained and that it was in fact defective and was the cause of Plaintiff's fall." ECF No. 58 at ¶ 16. Plaintiff relies entirely upon produced maintenance records for various escalators and elevators in the Bloomingdales in question to support her unspecific allegation that a malfunction of the escalator caused her to fall and be injured. *Id.* at ¶¶ 17-27.

In order to establish negligence, Plaintiff would have to prove at trial the following: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104, 108 (Pa. Super. 2011) (citations and quotations omitted); *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp. 2d 547, 548 (E.D. Pa. 2008), *aff'd sub nom. Craig v. Mills Corp.*, 350 F. App'x 714 (3d Cir. 2009) (citing *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir.2005) (applying Pennsylvania law)). Assuming *arguendo* that Plaintiff has made a *prima facie* showing of a duty or obligation recognized by law and a breach of that duty by both Defendants, Plaintiff is incapable of pointing to any evidence of record establishing a causal connection between either of Defendant's alleged conduct and the alleged resulting injury. Plaintiff does not claim that the operation of the escalator was out of the ordinary while she and her granddaughter were riding it. Indeed, Plaintiff testified that the escalator was not operating at an excessive speed, it was not jerking or shaking, it was not lurching, and it was not stopping or starting suddenly. Mable Dep. Tr. at 73:16-24. Plaintiff did not observe which part of the escalator caught her pant hem (if it caught at all), and she offered no explanation for how her pant leg became caught in the escalator either.

Plaintiff has also wholly failed to connect any maintenance with the escalator, or lack thereof, to her alleged fall and subsequent injury. Surely, the

maintenance records show that maintenance was performed, but Plaintiff has failed to show how evidence that maintenance was performed is related to the claim that her pant leg was caught by the escalator. Nothing about the maintenance records prior to Plaintiff's alleged fall indicate any ongoing malfunctions that Plaintiff may be able to argue establish a causal connection to her accident.

As to any claim Plaintiff may be trying to assert against Bloomingdales owing a duty to Plaintiff as an invitee, Plaintiff cannot meet her burden of proving that a condition on the store premises created an unreasonable risk of harm, that Bloomingdales had actual or constructive notice of that condition, and that the dangerous condition caused Plaintiff's alleged injury. "Pennsylvania courts have adopted the Second Restatement approach to determining the duty owed by a possessor of land to a person on his land." *Craig*, 555 F. Supp. 2d at 549 (citations omitted). "Under this approach, '[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespassor, licensee, or invitee.'" *Id.* (quoting *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983)). During the time that Plaintiff was shopping at Bloomingdales, she was an "invitee." *See* Restatement (Second) of Torts § 332 (defining an "invitee" to include "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land").

"Possessors of land owe a duty to protect invitees from foreseeable harm." *Craig*, 555 F. Supp. 2d at 549 (citations omitted). "The Restatement clarifies that a duty is owed only when the possessor 'knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee.'" *Id.* (citations omitted). "In other words, the possessor of the land must have 'actual or constructive notice' of the dangerous condition." *Id.* (citations omitted).

Plaintiff has failed to make any showing of a condition that posed an unreasonable risk of harm to Plaintiff, much less that even if such a condition existed (and it did not) that Bloomingdales knew about it and failed to warn Plaintiff regarding it.

Accordingly, Plaintiff has failed to put forth any direct evidence that either Defendant here was negligent or that even if they were negligent, that said negligence caused Plaintiff's alleged injury, which is also wholly unsupported by the record as put forth by Plaintiff.

B. <u>Plaintiff fails to establish the prerequisites for establishing a claim based on the doctrine of *res ipsa loquitur*.</u>

As Plaintiff has failed to make a showing of negligence against Defendants using direct evidence, the Court next considers her argument that she can make a *prima facie* case based on circumstantial evidence under the theory of *res ipsa loquitur*. Pennsylvania courts follow the Restatement (Second) of Torts regarding

this doctrine. Section 328D of the Restatement, entitled "Res Ipsa Loquitur," provides:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts §328D (1965).

Defendants argue that Plaintiff fails to show that her accident is the type of event which ordinarily does not occur in the absence of negligence. Indeed, there could be a number of possible causes for a fall on an escalator. Not only has Plaintiff failed to show that her accident is the type of event which ordinarily does not occur in the absence of negligence, she is unable to provide a sufficiently detailed description of the event for the Court to infer that Defendants' negligence was the cause of the fall much less that it *had to be* the cause of the fall. In order to make such an inference, the Court would need to know details like which part of the escalator caught Plaintiff's pant, where the escalator caught her pant hem, among other things.

Strikingly, Plaintiff herself admitted during her deposition that she did not know whether a properly maintained escalator could have caused the very injury of which she complains. In fact, she admitted that if it was proven that the escalator in question was indeed properly maintained, that her "answer would have to be yes, that a properly maintained escalator could have caused this accident." Mable Dep. Tr. At 78–79. At this stage in the proceedings, nine months after Plaintiff filed her Complaint and nearly three weeks before the scheduled arbitration is to begin, Plaintiff must be able to assert more than mere conjecture about the cause of her alleged injuries in order to survive summary judgment. Because Plaintiff cannot offer more than mere conjecture to support her claims against Defendants, Defendants' Motion for Summary Judgment (ECF No. 46) will be granted and Plaintiff's claims dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 46) will be granted. An appropriate Order follows.

DATED: 12-17-2019

BY THE COURT:

_____
CHAD F. KENNEY, J.